IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHARLES LUNSFORD                                                              PLAINTIFF

v.                                    4:05CV00621-WRW

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                                                DEFENDANT

**ORDER**

Plaintiff appeals the Social Security Administration Commissioner's decision to deny his claim for Supplemental Security Income benefits.[1] Plaintiff challenges the Administrative Law Judge's ("ALJ") determination that he retained the residual functional capacity to perform sedentary work, and, therefore, was not disabled. Plaintiff has filed a Motion for Summary Judgment (Doc. No. 26), and Defendant has responded (Doc. No. 27). In this judicial review, I must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.[2] For the reason below, the Commissioner's decision is affirmed.

I.  **Procedural Background**

Plaintiff filed an application for Supplemental Social Security Income on August 13, 2002, claiming that he had been disabled since January 28, 2002, due to "pulmonary infiltrates, shortness of breath, [and] interstial [sic] pneumonitis."[3] Plaintiff's initial application was denied on October

---

[1] 42 U.S.C.A. § 1381a.

[2] 42 U.S.C. § 405(g).

[3] Tr. 16, 51-53, 65; http://www.medilexicon.com/searches/medterms.php - "Interstitial pneumonitis" is a form of pneumonia which involves the interstitial tissues (connective tissues) of the lung.

4, 2002.[4] Plaintiff filed a request for reconsideration on November 22, 2002,[5] which was denied on January 21, 2003.[6] An administrative hearing was held on March 17, 2004, and Plaintiff's application was denied on May 27, 2004.[7] On February 16, 2005, the Appeals Council determined that no basis existed for review of the ALJ's decision.[8] Therefore, the ALJ's decision became the Commissioner's final decision.[9] Plaintiff appealed the ALJ's decision by filing a Complaint in this Court on April 19, 2005.

## II. Summary of the Evidence

Plaintiff, born on August 25, 1952, was 49 at the time of his application for Social Security Income benefits, which places him as just short of the "advanced age" category.[10] He has the equivalent of a high school education and his past relevant work includes employment as a meat market manager and meat cutter from 1987 until January 2002.[11]

Plaintiff's last day of employment was January 27, 2002, when he was diagnosed with pneumonia.[12] On February 4, 2002, Plaintiff was hospitalized and found to be suffering from

---

[4]Tr. 26.

[5]Tr. 32.

[6]Tr. 34.

[7]Tr. 16-22.

[8]Tr. 5.

[9]42 U.S.C. § 405(g).

[10]Tr. 20.

[11]Doc. No. 26.

[12]Tr. 50.

bronchiolitis obliterans with organizing pneumonia ("BOOP"), which was treated by high-doses of steroids.[13] Plaintiff remained hospitalized until March 1, 2002.[14] His treating physician described his condition as being "consistent with COPD/asthma, which is intermittent depending on his amount of exertion, temperature, inhaled irritants, etc."[15]

In May 2002, chest x-rays revealed that Plaintiff had "worsening bilateral lung infiltrates."[16] Then in July 2002, a pulmonologist determined that Plaintiff was suffering side-effects from the steroids including weight gain, muscle cramps, coughing, congestion, night sweats, and trouble sleeping.[17] A second physician treated Plaintiff on July 28, 2002, and found that his chest x-rays had not improved from his post-hospital films.[18]

In January 2004, Plaintiff's x-rays still showed pulmonary infiltrates, and he was diagnosed with diabetes, "likely secondary to chronic steroids."[19] In a "Chronic Pulmonary Insufficiency Questionnaire" given in March 2004, Plaintiff's physician, Dr. Denver Barger, diagnosed Plaintiff as suffering from: (1) bronchitis obliterans, (2) diabetes (steroid induced), and (3) chronic foot and ankle pain.[20] His symptoms included coughing, "an asthmatic bronchitic type, sometimes

---

[13]Tr. 97.

[14]Doc. No. 26.

[15]Tr. 246.

[16]Tr. 193.

[17]Tr. 186.

[18]Tr. 158.

[19]Tr. 232.

[20]Tr. 228.

productive, shortness of breath, episodic acute bronchitis, fatigue, and episodes of difficulty breathing.[21] Plaintiff was told to avoid exposure to even a minimal amount of fumes/chemicals, temperature change, humidity, product fragrances, cleaning fluids, and dust.[22]

## III. Standard of Review

The scope of review of an ALJ's decision is narrow.[23] The Commissioner's decision must be affirmed if it conforms to the law and is supported by substantial evidence on the record as a whole.[24] Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support the decision.[25]

Substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it."[26] The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial."[27]

---

[21]*Id.*

[22]Tr. 231.

[23]*Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005); *Bailey v. Apfel*, 230 F.3d 1063, 1065 (8th Cir. 2000); 42 U.S.C. § 405(g).

[24]*Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998).

[25]*Hunt v. Massanari*, 250 F.3d 622, 623 (8th Cir. 2001).

[26]*Cox v. Barnhart*, No. 06-2226, 2006 WL 3751503, *3 (8th Cir. Dec. 22, 2006).

[27]*Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003).

A balancing test is used to assess contradictory evidence,[28] but, the evidence presented to the ALJ, should not be re-weighed[29] or given a *de novo* review.[30] Instead, if, after reviewing the evidence, it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision."[31] The Administrative Law Judge concluded that Plaintiff had a residual functional capacity for sedentary work[32]

The burden rests with a claimant to prove his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in any substantial gainful activity.[33] A claimant must provide medical findings that support each of the criteria for the equivalent impairment determination.[34]

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

---

[28] *Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir.1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99 (1981)).

[29] *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir.1995)).

[30] *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).

[31] *Id*. (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir.1992).

[32] Tr. 21.

[33] *Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir. 1998).

[34] *Anderson v. Apfel*, 996 F. Supp. 869 (E.D. Ark. 1998).

for a continuous period of not less than twelve months."[35] A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."[36]

**IV.   Discussion**

The ALJ considered Plaintiff's impairments under the required five-step sequential evaluation process.[37]  First, he found that Plaintiff had not engaged in substantial gainful activity since filing his application.[38] Second, the ALJ found that, based on the medical evidence, Plaintiff's bronchiolitis obliterans organizing pneumonia syndrome, probable steroid induced diabetes, and chronic arthritis in the ankles and lower extremities are "severe."[39]  Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing.[40]

The fourth step required the ALJ to determine whether Plaintiff had sufficient residual functional capacity, despite his impairment, to perform his past work.  The ALJ concluded that Plaintiff retained the residual functional capacity to perform sedentary work.[41] The ALJ explained that although Plaintiff was unable to perform his past relevant work as a meat market manager or

---

[35] 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505.

[36] 42 U.S.C. § 432(d)(2)(A).

[37] 20 C.F.R. § 404.1520.

[38] Tr. 17.

[39] Tr. 21; 20 C.F.R. § 416.920(c).

[40] Appendix 1, Subpart P, Regulations No. 4.

[41] Tr. 21.

meat cutter, that "[w]ithin six months of the alleged onset date, claimant regained the exertional capacity for the sustained performance of a full range of sedentary work activity."[42] Based on the above, the ALJ found that Plaintiff does not suffer from a "disability" as defined in the Social Security Act.[43]

Plaintiff first argues that the ALJ did not take Dr. Barger's opinions fully into account when making his findings. Plaintiff cites to Dr. Barger's statement that Plaintiff's fatigue would "interfere with the patient's ability to maintain attention and concentration to sufficiently complete tasks in a timely manner" and on a "constant" basis.[44] Dr. Barger stated that Plaintiff would require "complete freedom to rest frequently without restriction,"[45] and should avoid exposure to even a minimal amount of the following: fumes/ chemicals, temperature change, humidity, product fragrances, cleaning fluids, and dust.[46]

"A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight."[47] "It should be granted controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."[48]

---

[42]*Id*.

[43]Tr. 18, *see also* 20 C.F.R. §§ 404.1520(f) and 416.920(f).

[44]Tr. 222.

[45]Tr. 225.

[46]Tr. 231.

[47]*Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000).

[48]*Id*.

The Commissioner argues that the ALJ gave Dr. Barger's opinions their appropriate weight in light of the fact that his comments were made two years after his last examination of Plaintiff. The most recent physical exam performed by Dr. Barger occurred in July 2002,[49] but Dr. Barger did not make his comments until March 2004. Plaintiff also alleges that the ALJ's discounted Dr. Barger's testimony regarding Plaintiff's steroid induced diabetes. The Commissioner notes that there was no evidence presented that the condition required any special treatment.

In January 2004, Plaintiff saw Dr. Clifton Johnson, a pulmonary physician. Plaintiff told Dr. Johnson that he was "going to try to go back to work."[50] In this visit, Dr. Johnson learned that Plaintiff experienced only "occasional coughing and congestion," that his shortness of breath had stabilized, and that he had no other complaints.[51] Dr. Johnson didn't note any pain, fatigue, diabetes limitations or complications. Dr. Johnson also did not place any environment restrictions on Plaintiff.

Because Dr. Barger had not treated Plaintiff in two years, and because Dr. Johnson didn't place Plaintiff on similar environmental restrictions, there is substantial evidence to support the ALJ's decision to discount Dr. Barger's testimony.

Plaintiff next argues that the ALJ did not take into account the environmental and physical limitations when he made his findings that Plaintiff could perform a "full range" of work. Plaintiff also argues that the ALJ did not consider Plaintiff's work record; his limited daily activities; the duration, frequency, and intensity of his symptoms; precipitating and aggravating factors, such as

---

[49]Tr. 158.

[50]Tr. 233.

[51]Tr. 232.

environmental considerations. Plaintiff challenges the ALJ's finding that he "has a regular schedule of daily activities and . . . has not undertaken any lifestyle adaptations or home environment alterations to accommodate the impairment-driven restrictions he describes."[52] Plaintiff claims that his daily activities are severely limited having gone from working full time to having to remain still in the air conditioning in order to breath comfortably. Plaintiff relies heavily on the ALJ's comment that "[i]f claimant's allegations actually reflected his retained work ability, I would find his functional capacity to be for a lesser level of work."[53] Plaintiff contests the ALJ's findings that his complaints were "exaggerated."

Simply because Plaintiff worked as a meat market manager and meat cutter for the better part of 15 years, does not mean that he is disabled because he can no longer perform those professions. An ALJ may discredit subjective complaints of pain if they are inconsistent with the record as a whole.[54] The ALJ properly relied upon discrepancies between Plaintiff's allegations of pain and his treatment history, medicinal selections, and daily activities in disregarding her subjective complaints. If the ALJ discredits a claimant's credibility and gives a good reason for doing so, deference is will be given to his judgment even if every factor is not discussed in depth.[55]

---

[52]Tr. 19.

[53]Tr. 19.

[54]*Barry v. Shalala*, 885 F. Supp. 1224, 1223 (N.D. Iowa 1995); *Ness v. Sullivan*, 904 F.2d 432, 436 (8th Cir. 1990) ("The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; 5) functional restrictions.").

[55]*Id*.

The medical evidence does not support Plaintiff's subjective complaints, but supports the finding that Plaintiff could perform sedentary work. The ALJ found that the medical findings were inconsistent with Plaintiff's complaints of a disabling respiratory condition and lower extremity impairments. The ALJ was free to discount allegations of joint pain or limitations since Plaintiff never sought treatment for ankle or foot pain. Moreover, Plaintiff testified that he regularly walked on his treadmill from 5 to 30 minutes. The ALJ noted that Plaintiff had a "regular schedule of daily activities . . . ." Plaintiff reported that he could care for his own grooming needs and could do the laundry, dishes, take out the trash, shop for groceries, and run errands to the bank and post office. Plaintiff also admitted to regularly reading, cooking, pay bills, drive, walk for exercise and for errands, watch television, listen to the radio, and visit with friends and relatives.

The ALJ observed that "Dr. Johnson has several times stated that the chest x-rays have been stable since May 23, 2002, film which revealed normal lung expansion despite residual infiltrates."[56] Although Plaintiff complained of coughing and shortness of breath, he did not require oxygen treatment, out-patient physical therapy, or hospitalization. Also, none of Plaintiff's physicians ever stated that he was disabled. Furthermore, Dr. Barger's statements regarding Plaintiff's work limitations and need for rest were in reference to his past employment as a meat cutter and not in reference to his ability to perform a sedentary position. In fact, in December 2004, Dr. Barger sent a letter to the Commissioner's Appeal Counsel stating his belief that Plaintiff would probably be happier going back to work and working in a less demanding field of work than his past heavy job.[57]

---

[56]Tr. 18.

[57]Tr. 246-247.

In his final argument, Plaintiff challenges the ALJ's reliance on the Vocational Expert's ("VE") findings that he can perform sedentary work in an "office environment" where the jobs could be "performed in stable temperatures away from airborne contaminants."[58] Plaintiff contends that the ALJ mischaracterized the VE's response to the hypothetical question he posed because he only mentioned a functional capacity for sedentary work and didn't include environmental constraints.

The Court in *Fuller v. Barnhart*,[59] held that a similar hypothetical question was flawed because the ALJ did not mention environmental restrictions in the hypothetical question presented to the VE. Plaintiff insists that the environmental restrictions are necessary to the analysis because Dr. Barger felt that they would complicate his already existing shortness of breath, coughing, episodic acute bronchitis, and fatigue. Dr. Barger suggested that his "symptoms would interfere with [Plaintiff's] ability to maintain reliable attendance in a work setting."[60]

The Eight Circuit has repeatedly held that "vocational testimony elicited by hypothetical questions that fail to relate with precision the physical and mental impairments of the claimant cannot constitute substantial evidence to support the Secretary's decision."[61] In *Fuller*, the Court held that the ALJ's failure to include rest periods in his hypotheticals nullified the vocational expert's testimony to support the Secretary's decision in this case.[62]

---

[58]Tr. 20.

[59]328 F. Supp. 2d 952 (E.D. Ark. 2004).

[60]Doc. No 229.

[61]*Ness v. Sullivan*, 904 F.2d 432, 436 (8 Cir. 1990) (quoting *Bradley v. Bowen*, 800 F.2d 760, 763 n. 2 (8th Cir.1986).

[62]*Id*.

The ALJ did not err by failing to mention environmental limitations in the hypothetical. As discussed earlier, the limitations were suggested by a doctor who had not treated Plaintiff in two years. More importantly, Dr. Johnson, a pulmonary specialist who Plaintiff had recently seen, did not recommend any environmental limitations.

Sufficient evidence exists to support the ALJ's conclusions. There was a discrepancy between Plaintiff's medical treatment history and his subjective complaints. The record indicated that Plaintiff had not sought medical treatment to alleviate his alleged pain, and he was not taking any prescription medicine intended to treat such pain. The ALJ properly took this evidence into account in discrediting his complaints. Based upon this evidence the ALJ was entitled to discount Plaintiff's complaints, and the hypothetical was not defective for failing to include them. Because the hypothetical properly characterized Plaintiff's limitations, the vocational expert's testimony in response constitutes substantial evidence upon which the ALJ was entitled to rely in finding that Plaintiff was not disabled.

**V.     Conclusion**

After careful consideration of the record as a whole, the ALJ's decision was supported by substantial evidence and is AFFIRMED.

IT IS SO ORDERED this 22nd day of March, 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE